**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND and CATHERINE WENSKUS, Administrator of the Funds,** | ) | **Case No.** 19-cv-6919 |
| **Plaintiff,** | ) | |
| **and** | ) | |
| **P.S. COYOTE PLUMBING ENTERPRISE INC., an Illinois corporation,** | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds ("Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine C. Mosenson and Sara S. Schumann for their Complaint against PS Coyote Plumbing Enterprises, Inc. ("Company") and Elda Mannion ("Mannion), individually:

**FACTS COMMON TO ALL COUNTS**

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Chicago Laborers' Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus is the Administrator of the Laborers' Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Laborers' Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Laborers' Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant PS Coyote Plumbing Enterprises, Inc. (hereinafter "Company") is an Illinois limited liability company that did and does conduct business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union operates and maintains its office within the District. The Union and Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2017. ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company to the Laborers' Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), MARBA Industry Advancement Fund ("IAF"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

8. The Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in

which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10. Upon request the Company submitted its books and records to the Funds for an audit covering the period June 1, 2017 through June 30, 2019.

**COUNT I**

**(Failure To Pay Employee Benefit Contributions to Funds as Revealed by an Audit)**

11. The Laborers' Funds re-allege and incorporate the allegations contained in paragraphs 1-10 of this Complaint.

12. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company performed covered work during the audit period of June 1, 2017 through June 30, 2019 but failed to pay the Funds all required contributions. According to the Funds' Audit the Company:

(a) failed to report and pay contributions in the amount of $4,826.88 owed to Funds for the audit period June 1, 2017 through June 30, 2019 thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay contributions in the amount of $3,897.60 owed to Funds of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of June 1, 2017 through June 30, 2019 thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay contributions in the amount of $1,824.00 owed to Laborers' District Council Retiree Health and Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of June 1, 2017 through June 30, 2019, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d) failed to report and pay contributions in the amount of $276.48owed Laborers' Training Fund for the audit period of June 1, 2017 through June 30, 2019, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e) failed to report and pay contributions in the amount of $65.28 owed to Laborers' District Council Labor Management Committee Cooperative ("LMCC") for the audit period of June 1, 2017 through June 30, 2019, thereby depriving the LMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f) failed to report and pay contributions in the amount of $3.84 owed to CISCO for the audit period of June 1, 2017 through June 30, 2019, thereby depriving the CISCO of

contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(g) failed to report and pay contributions in the amount of $26.88 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit period of June 1, 2017 through June 30, 2019, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

(h) failed to report and pay contributions in the amount of $26.88 owed to MARBA Industry Advancement Fund ("IAF") for audit period of June 1, 2017 through June 30, 2019 thereby depriving the IAF of contributions, income and information needed to administer the Fund and jeopardizing the benefits of participants and beneficiaries.

13. A true and accurate copy of the Funds' Audit for the period June 1, 2017 through June 30, 2019 is attached as Exhibit B and a Summary of Amounts Owed including liquidated damages, accumulated liquidated damages, interest and audit costs is attached as Exhibit C.

14. The Company was also assessed accumulative liquidated damages as a result of paying its November 2015, January 2016, November 2016-June 2017, and March 2018-May 2018 monthly fringe benefit reports beyond the time proscribed by the "Agreement" the liquidated damages were assessed at 10% of the monthly fringe benefit report amount and total $5,590.25.

15. The Company' failure to submit payment upon an audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

16. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Note and Guaranty, the Company and Mannion are

liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulative liquidated damages on the late paid contributions, audit costs, reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Funds respectfully request that this Court:

a. enter judgment in sum certain in favor of the Funds and against Defendants PS Coyote Plumbing Enterprises, Inc. , on the amounts due and owing pursuant to the audit for the period of June 1, 2017 through June 30, 2017 plus interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs;

b. enter judgment in favor of the Funds and against Defendants PS Coyote Plumbing Enterprises, Inc. in the amount of $5,590.25 as a result of the late payment of its monthly fringe benefit reports.

c. awarding Funds' any further legal and equitable relief as the Court deems appropriate.

**COUNT II**

**(Breach of Settlement Agreement)**

17. The Laborers' Funds re-allege and incorporate the allegations contained in paragraphs 1 through 10 of this Complaint.

18. The Fund previously conducted a fringe benefit and dues compliance audit of Company's books and records for the period of July 1, 2015 through May 31, 2017. The audit revealed the Company failed to remit fringe benefit and due contributions, liquidated damages, interest and audit costs totaling $31,440.20.

19. In December 2017 the Parties agreed to resolve the audit findings for $25,407.88. The Company agreed to make 2 monthly installment payments of $12,703.94.

20. On December 29, 2017, the Company made their first installment payment of $12,703.94 but failed to remit the second monthly installment payment. In December 2018, the Funds agreed to forgo filing suit to collect the balance of the settlement amount on the condition that the Company submitted monthly payments of $1,000.00 until the settlement balance of $12,703.94 was paid off. The Company remitted three (3) $1,000.00 payments, but failed to make remaining monthly payments. The settlement balance currently is $9,703.94.

21. The Funds made numerous written and verbal requests for the Company to make the remaining settlement payments but the Company has failed to do so.

22. The Company's failure to pay the audit settlement to the Funds has deprived each Fund of contributions incoming information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

WHEREFORE, Plaintiffs Laborers' Funds respectfully request that this Court enter:

a. judgment in favor of the Funds and against Defendants PS Coyote Plumbing Enterprise, Inc. in the amount of $9,703.94; and

b. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

October 21, 2019

Respectfully submitted,

By: /s/ G. Ryan Liska

G. Ryan Liska
Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540



# CONSTRUCTION & GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between R.S. Coyote Plumbing Enterprise, Inc. ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. Recognition. The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment. If majority recognition previously was granted under Section 9(a) of the Act, it shall remain in effect. Otherwise, recognition under Section 9(a) of the Act shall automatically be granted to the Union without the need for a Board certified election upon the Union's demonstration that a majority of the employees have designated the Union as their exclusive bargaining representative. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension hereof, without written approval from the Union. The Employer shall abide by this Agreement, and all extensions hereof, provided that it employs at least one Laborer during the term of this Agreement or the term of any extension hereof.

2. Labor Contract. The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Gypsum Drywall Contractors of Northern Illinois/Chicagoland Association of Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. Total economic increase. The Employer shall pay its employees a total economic increase of $2.90 per hour effective June 1, 2006; $3.00 per hour effective June 1, 2007; $3.00 per hour effective June 1, 2008 and $3.10 per hour effective June 1, 2009, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2006 the minimum wage rate shall be $31.66 per hour.

4. Dues Checkoff. The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in the amount of 2.75% of gross wages or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made.

5. Work Jurisdiction. This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. Subcontracting. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. If the Employer contracts or subcontracts any such covered work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund as set forth in the applicable fringe benefit article(s). The Employer shall further assume the obligations of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. Fringe Benefits. The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDCLMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer ratifies and confirms the appointment of the employer trustees who shall, together with their successor trustees, carry out the terms and conditions of the trust instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. Contract Enforcement. All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the work force at all job sites.

9. Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. Termination. This Agreement shall remain in full force and effect from June 1, 2006 (unless dated differently below) through May 31, 2010, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. Execution. The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept the facsimile signatures on this Agreement as if they were the original signatures.

Dated: 08-20-, 2009.

R.S. Coyote Plumbing Enterprise, Inc.

ACCEPTED:

Laborers' Local Union No. [illegible]

By: [signature]

CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: [signature]
James P. Connolly, Business Manager

By: [signature]
Richard Shinners, Secretary-Treasurer

For Office Use Only: IM-UCA

FEIN No.: [illegible]

Carol Stenton - President
(Print Name and Title)

[signature]
(Signature)

[illegible] Mill Ave.
(Address)

[illegible], IL [illegible]
(City, State and Zip Code)

847-[illegible]
(Telephone/Telefax)

RECEIVED AUG 31 2009

Effective August 15, 2007 WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

EXHIBIT A

PS Coyote Plumbing Enterprise
268 Mill Avenue, Unit 3
Hampshire, IL 60140

Employer Number:35005

June 1, 2017 to June 30, 2019






To the Administrator of
Pension and Welfare Funds of Construction and General
Laborers' District Council of Chicago and Vicinity

Re: PS Coyote Plumbing Enterprise
Reporting Period: June 1, 2017 to June 30, 2019

We were engaged by the Board(s) of Trustees of the Pension and Welfare Funds of Construction and General Laborers' District Council of Chicago and Vicinity, (the Funds) to assist you in determining whether contributions to the Funds were made in accordance with the Collective Bargaining and Trust Agreements during the above referenced reporting period.

The management of PS Coyote Plumbing Enterprise is responsible for making contributions in accordance with the requirements of the Collective Bargaining and Trust Agreements.

This engagement was performed in accordance with Statements on Standards for Consulting Services issued by the American Institute of Certified Public Accountants. We were not engaged to, and did not, conduct an audit, the objective of which would be the expression of an opinion. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

Our procedures and findings are included in the attached schedules.

The findings of this report should not be construed as an endorsement or ratification of any of the Employer's contribution practices. The findings are based solely on those documents that the Employer provided to us. We have not been retained to provide, and do not provide, any interpretation or advice concerning any terms of the collective bargaining agreement between the Employer and the Union or the terms of the Funds' respective Agreement and Declarations of Trust. All questions concerning the Employer's contribution practices, or any contributions or benefits-related issue, should be directed to the Union or the Fund office. No failure to note an exception to any of the employer's contribution practices should be construed as a ratification of such practice or waiver of the Union or the Funds' ability to challenge such practice in the future.

This report is intended solely for the information and use of the Trustees and Administrator of the Pension and Welfare Funds of Construction and General Laborers' District Council of Chicago and Vicinity, and is not intended to be and should not be used by anyone other than these specified parties.

Legacy Professionals LLP

Westchester, Illinois

August 30, 2019

4 Westbrook Corporate Center | Suite 700 | Westchester, IL 60154 | 312-368-0500 | 312-368-0746 Fax | www.legacycpas.com

LEGACY PROFESSIONALS, LLP
**COMPLIANCE AUDIT INFORMATION SHEET**

| | | | |
|---|---|---|---|
| EMPLOYER NAME | PS Coyote Plumbing Enterprise | EMPLOYER # | 35005 |
| ADDRESS | 268 Mill Avenue, Unit 3 | PHONE # | (847) 683-7510 |
| CITY/STATE/ZIP | Hampshire, IL 60140 | FEIN # | |
| DATE OF CONTACT | July 29, 2019 | AUDIT PERIOD | June 1, 2017 to June 30, 2019 |
| CONTACT'S NAME | Carol Stratton | TITLE | President |
| ENTITY TYPE | CORPORATION | FIELD REPRESENTATIVE | Mike Christopher |
| MAIN BUSINESS ACTIVITY | Plumbing Contractor: Plumbing | AUDIT DATE | August 12, 2019 |
| | SOURCE TAX DOCUMENT: | Q3 2017-Q2 2019 SUTA's | |
| TOTAL PAYROLL WAGES: | $ 1,053,948.44 | TOTAL LABORER WAGES: | $ 113,451.20 |
| TOTAL UNION WAGES: | $ 659,419.15 | TOTAL PLUMBERS WAGES: | $ 545,967.95 |
| TOTAL NON-UNION WAGES: | $ 394,529.29 | | |
| AVERAGE # CHI. LABORERS: | 1 | | |
| AVERAGE # OF EMPLOYEES: | 5 | | |
| AVERAGE GROSS SALES: | $ 1,461,959.00 | | |

| OWNERSHIP-PRINCIPALS | TITLE | % | ADDRESS |
|---|---|---|---|
| Carol Stratton | President | 50% | |
| Marlene Salerno | Secretary | 50% | |

BANKING FACILITIES USED AND ACCOUNT NUMBER: Golden Eagle Community Bank-[illegible] owner's personal)

DOES EMPLOYER HAVE INTEREST IN OTHER OPERATIONS ? ☐ YES ☑ NO

IF YES, LIST NAME OF SAME

DOES THE EMPLOYER HAVE A FRINGE BENEFIT BOND FOR THE CHICAGO LABORERS TRUST FUNDS?

☐ YES ☐ NO

IF YES, AND UNABLE TO PROVIDE WITH REPORT EXPLAIN WHY: Not Provided

AUDIT SITE (IF DIFFERENT FROM EMPLOYER'S ADDRESS): N/A

ALL REQUIRED ACCOUNTING RECORDS WERE AVAILABLE WITH THE EXCEPTION OF:

Cancelled checks were not attached to the bank statements. Timecards were not maintained during the audit period.

BRIEFLY DESCRIBE THE NATURE OF THE DELINQUENCY, IF ANY: Employer failed to report September and October 2018.

DID YOUR EXAMINATION UNCOVER ANYTHING SPECIAL OR UNUSUAL WHICH SHOULD BE BROUGHT TO THE ATTENTION OF THE FUND COUNSEL OR OTHER INTERESTED PERSONS?

☐ YES ☑ NO

IF YES, EXPLAIN:

AUDITOR: Maxy Green

# Laborers' District Council
## Reconciliation of Differences Per Year

| Fiscal Year Ending | 5-31-2015 | 5-31-2016 | 5-31-2017 | 5-31-2018 | 5-31-2019 | 5-31-2020 | Total Due |
|---|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | - | - | - | - | 384.00 | - | 384.00 |
| Dues Hours Not Reported | - | - | - | - | 384.00 | - | 384.00 |
| Dues Wages Not Reported | - | - | - | - | 17,109.36 | - | 17,109.36 |
| **Dollar Amount Due** | | | | | | | |
| Welfare (Active) | - | - | - | - | 3,897.60 | - | 3,897.60 |
| Welfare (Retiree) | - | - | - | - | 1,824.00 | - | 1,824.00 |
| Pension | - | - | - | - | 4,826.88 | - | 4,826.88 |
| Training | - | - | - | - | 276.48 | - | 276.48 |
| IAF - MARBA | - | - | - | - | 26.88 | - | 26.88 |
| CISCO - MARBA | - | - | - | - | 3.84 | - | 3.84 |
| LECET | - | - | - | - | 26.88 | - | 26.88 |
| LDCLMCC | - | - | - | - | 65.28 | - | 65.28 |
| Working Dues | - | - | - | - | 641.60 | - | 641.60 |
| Total | $ - | $ - | $ - | $ - | $ 11,589.44 | $ - | $ 11,589.44 |

| | |
|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | $ - |
| Plus previous underpayments incurred to Laborers' Pension and Welfare Funds | $ 5,024.05 |
| Plus previous late charges assessed by Laborers' District Council Funds | $ 566.20 |
| Audit Fee | $ 1,189.94 |
| Total Amount Due | $ 18,369.63 |

| | | | |
|---|---|---|---|
| Employer Name: | PS Coyote Plumbing Enterprise | Person Contacted: | Carol Stratton |
| Employer #: | 35005 | Date of Contact: | July 29, 2019 |
| Date of Audit: | August 12, 2019 | Telephone: | (847) 683-7510 |
| Audit Period : | June 1, 2017 to June 30, 2019 | Auditor: | Maxy Green |

# Laborers' District Council

Schedule of Deficiencies

Employer Name: PS Coyote Plumbing Enterprise
Employer Number: 35005
Agreement Type: IMARBA

Audit Period: June 1, 2017 to June 30, 2019
Date of Audit: August 12, 2019
Field Auditor: Maxy Green

| | | | 2018 | | | | | | | 2019 | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SSN | Name | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | |
| | VILLA, EDUARDO | Fringe Hours | | | | 194.00 | 190.00 | | | | | | | | 384.00 |
| | | Dues Hours | | | | 194.00 | 190.00 | | | | | | | | 384.00 |
| | | Dues Wages | | | | 8,693.52 | 8,415.84 | | | | | | | | 17,109.36 |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Fringe Hours | - | - | - | 194.00 | 190.00 | - | - | - | - | - | - | - | 384.00 |
| Total Dues Hours | - | - | - | 194.00 | 190.00 | - | - | - | - | - | - | - | 384.00 |
| Total Wages | - | - | - | 8,693.52 | 8,415.84 | - | - | - | - | - | - | - | 17,109.36 |

| | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare (Active) | $10.15 | - | - | - | 1,969.10 | 1,928.50 | - | - | - | - | - | - | - | 3,897.60 |
| Welfare (Retiree) | $4.75 | - | - | - | 921.50 | 902.50 | - | - | - | - | - | - | - | 1,824.00 |
| Pension | $12.57 | - | - | - | 2,438.58 | 2,388.30 | - | - | - | - | - | - | - | 4,826.88 |
| Training | $0.72 | - | - | - | 139.68 | 136.80 | - | - | - | - | - | - | - | 276.48 |
| IAF - MARBA | $0.07 | - | - | - | 13.58 | 13.30 | - | - | - | - | - | - | - | 26.88 |
| CISCO - MARBA | $0.01 | - | - | - | 1.94 | 1.90 | - | - | - | - | - | - | - | 3.84 |
| LECET | $0.07 | - | - | - | 13.58 | 13.30 | - | - | - | - | - | - | - | 26.88 |
| LDCLMCC | $0.17 | - | - | - | 32.98 | 32.30 | - | - | - | - | - | - | - | 65.28 |
| Working Dues | 3.75% | - | - | - | 326.01 | 315.59 | - | - | - | - | - | - | - | 641.60 |
| | SHEET TOTAL | - | - | - | 5,856.95 | 5,732.49 | - | - | - | - | - | - | - | 11,589.44 |

GREEN - INPUT ONLY

ACCUMULATED INTEREST CALCULATION-
9/3/2019

| | |
|---|---|
| Contractor | PS Coyote Plumbing Enterprise |
| Audit or Report Period | June 1, 2017 to June 30, 2019 |
| Code | 35005 |
| Enter Interest Thru-Date | 8/30/2019 |
| Enter Beg Audit Period | 9/1/2018 |
| Interest | 12% |

Enter Audit Results:

| Audit | 1/1/2018 | 2/1/2018 | 3/1/2018 | 4/1/2018 | 5/1/2018 | 6/1/2018 | 7/1/2018 | 8/1/2018 | 9/1/2018 | 10/1/2018 | 11/1/2018 | 12/1/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare (Active) | | | | | | | | | 1,969.10 | 1,928.50 | | |
| Welfare (Retiree) | | | | | | | | | 921.50 | 902.50 | | |
| Pension | | | | | | | | | 2,438.58 | 2,388.30 | | |
| Training | | | | | | | | | 139.68 | 136.80 | | |
| IAF - MARBA | | | | | | | | | 13.58 | 13.30 | | |
| CISCO - MARBA | | | | | | | | | 1.94 | 1.90 | | |
| LECET | | | | | | | | | 13.58 | 13.30 | | |
| LDCLMCC | | | | | | | | | 32.98 | 32.30 | | |
| | | | | | | | | | | | | |
| OTHER - | | | | | | | | | | | | |
| Total | - | - | - | - | - | - | - | - | 5,530.94 | 5,416.90 | - | - |

Future Values:
auto-calc - numbers are locked:

| Beg Interest Month | 2/11/2018 | 3/11/2018 | 4/11/2018 | 5/11/2018 | 6/11/2018 | 7/11/2018 | 8/11/2018 | 9/11/2018 | 10/11/2018 | 11/11/2018 | 12/11/2018 | 1/11/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| End Interest Month | 8/30/2019 | 8/30/2019 | 8/30/2019 | 8/30/2019 | 8/30/2019 | 8/30/2019 | 8/30/2019 | 8/30/2019 | 8/30/2019 | 8/30/2019 | 8/30/2019 | 8/30/2019 |
| Term (year) | 1.55 | 1.47 | 1.39 | 1.30 | 1.22 | 1.14 | 1.05 | 0.97 | 0.89 | 0.80 | 0.72 | 0.64 |
| Welfare (Active) | - | - | - | - | - | - | - | - | 2,177.11 | 2,112.18 | - | - |
| Welfare (Retiree) | - | - | - | - | - | - | - | - | 1,018.84 | 988.46 | - | - |
| Pension | - | - | - | - | - | - | - | - | 2,696.18 | 2,615.77 | - | - |
| Training | - | - | - | - | - | - | - | - | 154.44 | 149.83 | - | - |
| IAF - MARBA | - | - | - | - | - | - | - | - | 15.01 | 14.57 | - | - |
| CISCO - MARBA | - | - | - | - | - | - | - | - | 2.14 | 2.08 | - | - |
| LECET | - | - | - | - | - | - | - | - | 15.01 | 14.57 | - | - |
| LDCLMCC | - | - | - | - | - | - | - | - | 36.46 | 35.38 | - | - |
| - | - | - | - | - | - | - | - | - | - | - | - | - |
| OTHER - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total | - | - | - | - | - | - | - | - | 6,115.21 | 5,932.83 | - | - |

auto - calc - numbers are locked:

| Accum Interest | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare (Active) | - | - | - | - | - | - | - | - | 208.01 | 183.68 | - | - |
| Welfare (Retiree) | - | - | - | - | - | - | - | - | 97.34 | 85.96 | - | - |
| Pension | - | - | - | - | - | - | - | - | 257.60 | 227.47 | - | - |
| Training | - | - | - | - | - | - | - | - | 14.76 | 13.03 | - | - |
| IAF - MARBA | - | - | - | - | - | - | - | - | 1.43 | 1.27 | - | - |
| CISCO - MARBA | - | - | - | - | - | - | - | - | 0.20 | 0.18 | - | - |
| LECET | - | - | - | - | - | - | - | - | 1.43 | 1.27 | - | - |
| LDCLMCC | - | - | - | - | - | - | - | - | 3.48 | 3.08 | - | - |
| - | - | - | - | - | - | - | - | - | - | - | - | - |
| OTHER - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total | - | - | - | - | - | - | - | - | 584.27 | 515.93 | - | - |

GREEN - INPUT ONLY

# ACCUMULATED INTEREST CALCULATION
9/3/2019

| | |
|---|---|
| Contractor | PS Coyote Plumbing Enterprise |
| Audit or Report Period | June 1, 2017 to June 30, 2019 |
| Code | 35005 |
| Enter Interest Thru-Date | 8/30/2019 |
| Enter Beg Audit Period | 9/1/2018 |
| Interest | 12% |

auto - calc - numbers are locked:

| Grand Total | Audit Amount | Accumulated Interest | Total Owed |
|---|---|---|---|
| Welfare (Active) | 3,897.60 | 391.69 | 4,289.29 |
| Welfare (Retiree) | 1,824.00 | 183.30 | 2,007.30 |
| Pension | 4,826.88 | 485.08 | 5,311.96 |
| Training | 276.48 | 27.78 | 304.26 |
| IAF - MARBA | 26.88 | 2.70 | 29.58 |
| CISCO - MARBA | 3.84 | 0.39 | 4.23 |
| LECET | 26.88 | 2.70 | 29.58 |
| LDCLMCC | 65.28 | 6.56 | 71.84 |
| - | - | - | - |
| OTHER - | - | - | - |
| Total | 10,947.84 | 1,100.20 | 12,048.04 |

LABORERS' PENSION & WELFARE FUNDS

9/3/19

SUMMARY OF AMOUNTS OWED

Audit Period June 1, 2017 to June 30, 2019

EMPLOYER PS Coyote Plumbing Enterprise

CODE 35005

| PERIOD | FRINGE HOURS | DUES HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | LECET | RATE | MARBA IAF | RATE | MARBA CISCO | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6-1-10 to 5-31-11 | - | - | - | 10.63 | - | - | - | 8.57 | - | 0.45 | - | - | 0.12 | - | 0.07 | - | 0.07 | - | 0.01 | - |
| 6-1-11 to 5-31-12 | - | - | - | 12.18 | - | - | - | 8.82 | - | 0.45 | - | - | 0.12 | - | 0.07 | - | 0.07 | - | 0.01 | - |
| 6-1-12 to 5-31-13 | - | - | - | 12.78 | - | - | - | 9.02 | - | 0.50 | - | - | 0.12 | - | 0.07 | - | 0.07 | - | 0.01 | - |
| 6-1-13 to 5-31-14 | - | - | - | 13.38 | - | - | - | 9.52 | - | 0.50 | - | - | 0.12 | - | 0.07 | - | 0.07 | - | 0.01 | - |
| 6-1-14 to 5-31-15 | - | - | - | 9.98 | - | 3.80 | - | 10.12 | - | 0.50 | - | - | 0.12 | - | 0.07 | - | 0.07 | - | 0.01 | - |
| 6-1-15 to 5-31-16 | - | - | - | 9.98 | - | 4.00 | - | 10.72 | - | 0.50 | - | - | 0.17 | - | 0.07 | - | 0.07 | - | 0.01 | - |
| 6-1-16 to 5-31-17 | - | - | - | 9.98 | - | 4.25 | - | 11.57 | - | 0.50 | - | - | 0.17 | - | 0.07 | - | 0.07 | - | 0.01 | - |
| 6-1-17 to 5-31-18 | - | - | - | 10.15 | - | 4.50 | - | 12.32 | - | 0.50 | - | - | 0.17 | - | 0.07 | - | 0.07 | - | 0.01 | - |
| 6-1-18 to 5-31-19 | 384.00 | 384.00 | 3,897.60 | 10.15 | 1,824.00 | 4.75 | 4,826.88 | 12.57 | 276.48 | 0.72 | 641.60 | 65.28 | 0.17 | 26.88 | 0.07 | 26.88 | 0.07 | 3.84 | 0.01 | 11,589.44 |
| 6-1-19 to 5-31-20 | - | - | - | 10.15 | - | 4.84 | - | 13.61 | - | 0.90 | - | - | 0.17 | - | 0.07 | - | 0.07 | - | 0.01 | - |
| SUBTOTAL | 384.00 | 384.00 | 3,897.60 | | 1,824.00 | | 4,826.88 | | 276.48 | | 641.60 | 65.28 | | 26.88 | | 26.88 | | 3.84 | | 11,589.44 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | | 64.16 | 6.53 | | 2.69 | | | | | | 73.38 |
| 20% LIQUIDATED DAMAGES | | | 779.52 | | 364.80 | | 965.38 | | 55.30 | | | | | | | 5.38 | | 0.77 | | 2,171.15 |
| AUDIT COSTS | | | 404.58 | | 392.68 | | 392.68 | | | | | | | | | | | | | 1,189.94 |
| ATTORNEY FEES | | | - | | - | | - | | | | | | | | | | | | | - |
| ACCUM. LIQUIDATED DAMAGES | | | 1,937.62 | | 829.32 | | 2,257.11 | | | | 566.20 | | | | | | | | | 5,590.25 |
| ACCUM. INTEREST | | | 391.69 | | 183.30 | | 485.08 | | 27.78 | | | 6.56 | | 2.70 | | 2.70 | | 0.39 | | 1,100.20 |
| TOTAL DUE | | | 7,411.01 | | 3,594.10 | | 8,927.13 | | 359.56 | | 1,271.96 | 78.37 | | 32.27 | | 34.96 | | 5.00 | | 21,714.36 |
| AUDIT PENALTY REDUCTION FROM 20% TO 10% IF THE AUDIT IS PAID WITHIN 30 DAYS FROM THE DATE OF THE AUDIT COVER LETTER DATED: | | | (389.76) | | (182.40) | | (482.69) | | (27.65) | | | | | | | (2.69) | | (0.38) | | (1,085.57) |
| TOTAL DUE, IF PAID WITHIN 30 DAYS | | | 7,021.25 | | 3,411.70 | | 8,444.44 | | 331.92 | | 1,271.96 | 78.37 | | 32.27 | | 32.27 | | 4.61 | | 20,628.80 |

